UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGE GROUP LIMITED,

                                   Plaintiff,

          - against -

REGAL LOGISTICS, CORP.,

                                   Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8 8 07

**OPINION AND ORDER**

06 Civ. 4328 (PKL)

**APPEARANCES**

LAZARUS & LAZARUS, P.C.
240 Madison Avenue, 8th Floor
New York, New York 10016

Harlan M. Lazarus, Esq.

Attorneys for Plaintiff

WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ, LLP
270 Madison Avenue
New York, New York 10016

Eric B. Levine, Esq.

Attorneys for Defendant

**Leisure, District Judge.**

Plaintiff Age Group Limited ("AGL") commenced this action against defendant Regal Logistics, Corp. ("Regal"), seeking actual damages for breach of certain business agreements and punitive damages by reason of the outrageousness of Regal's conduct, its violations of the law, its violations of public policy, and its concealment of the same.

Regal now moves to dismiss this action for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for improper venue, pursuant to 28 U.S.C. § 1391 and § 1406, and Federal Rule of Civil Procedure 12(b)(3).  Regal also moves, in the alternative, to transfer this action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

**BACKGROUND**

Plaintiff AGL is a New York Corporation involved in manufacturing, importing, wholesaling, and distributing wearing apparel. (Pl.'s Mem. Opp'n 2.)  Defendant Regal is a Washington Corporation that operates a warehouse distribution center in Fife, Washington. (Neeves Decl. 2.)  From November 30, 2004 through March 30, 2006, Regal provided warehouse services to AGL in Washington. (Pl.'s Mem. Opp'n 18; Def.'s Mem. Supp. 16.)  The majority of communication regarding the agreement between AGL

1

and Regal took place electronically. (Pl.'s Mem. Opp'n 5, 18; Def.'s Rep. Mem. Supp. 6.)  However, Regal representatives did visit AGL offices three times between November 30, 2004 and March 30, 2006, in the course of their business relationship. (Pl.'s Mem. Opp'n 6-7; Def.'s Mem. Supp. 14.)

In May of 2006, AGL filed a complaint alleging that Regal failed to perform properly the services promised to AGL.  AGL attributed Regal's inadequate performance to its employment of undocumented laborers who were arrested by the United States Government in November 2005. (Pl.'s Mem. Opp'n 9; Goldberg Decl. Exhibit A 1-6.)  Regal responded to these claims, arguing that the unsatisfactory performance of its services was caused instead by the tardiness of third party carriers; by delays at a distribution facility in Washington belonging to one of AGL's main customers; and by AGL's own errors in giving instructions to Regal. (Def.'s Mem. Supp. 1.)

Regal now moves to dismiss this action for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for improper venue, pursuant to 28 U.S.C. § 1391 and § 1406, and Federal Rule of Civil Procedure 12(b)(3).  Regal moves, in the alternative, to transfer this action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

2

The Court will consider the question of transfer under 28 U.S.C. § 1404(a) first, as it is dispositive.

## DISCUSSION

In <u>Corke v. Sameiet M. S. Song of Norway</u>, the Second Circuit adopted Judge Weinfeld's statement of the law in <u>Volk Corp. v. ART-PAK Clip Serv.</u>, 432 F. Supp. 1179 (D.C.N.Y. 1977), holding that a district court may transfer a case regardless of whether it has jurisdiction over the defendants and regardless of whether or not venue is proper, if the transfer would be in the interest of justice. <u>See</u> 572 F.2d 77, 80 (2d Cir. 1978); <u>see also</u> <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463 (1962); <u>Posven C.A. v. Liberty Mutual Ins. Co.</u>, 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004) (Leisure, J.).

If transfer is appropriate pursuant to 28 U.S.C. § 1404(a), then <u>a fortiori</u> transfer is appropriate under 28 U.S.C. § 1406(a). <u>See</u> <u>Posven</u>, 303 F. Supp. 2d at 400 n.3 (citing <u>Mantra Et Manurhin v. International Armament Co.</u>, 628 F. Supp. 1532, 1534 n.2 (S.D.N.Y. 1986) ("[I]f the action is properly transferable pursuant to § 1404(a), assuming venue is proper in this district, then <u>a fortiori</u> the action will also be properly transferable pursuant to § 1406(a), assuming venue in this district is improper.")). Whether the Court conducts its analysis under 28 U.S.C. § 1404(a) or § 1406(a), the central

3

consideration remains whether the proposed transfer is in the interest of justice. See Posven, 303 F. Supp. 2d at 400 n.3 (internal citation omitted); see also Spar, Inc. v. Information Res. Inc., 956 F.2d 392, 394 (2d Cir. 1992). Accordingly, the Court will proceed under 28 U.S.C. § 1404(a), keeping in mind that the principal inquiry is whether transfer is appropriate in the interest of justice.

I.   Legal Standard for Motion to Transfer Venue

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). On a motion to transfer, the movant bears the burden of establishing that a change of forum is appropriate. See Stinnes Interoil, Inc. v. Apex Oil Co., 604 F. Supp. 978, 983 (S.D.N.Y. 1985) (citation omitted); see also Beatie v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (Lesiure, J.) (citing Factors Etc. Inc. v. Pro Arts Inc., 579 F.2d 215, 218 (2d Cir. 1978)). To obtain a transfer of venue, the movant must establish (1) that "the action to be transferred is one that might have been brought in the district to which the movant seeks to have it transferred," and (2) that the "convenience of parties and witnesses and the interests of

4

justice favor transfer." <u>Royal Ins. Co. v. Tower Records, Inc.</u>,
No. 02 Civ. 2612, 2002 WL 31385815 at *2 (S.D.N.Y. 2002)
(Leisure, J.) (citing <u>Flagherty v. All Hampton Limousine Inc.</u>,
No. 01 Civ. 9939, 2002 U.S. Dist. LEXIS 15171 at *3 (S.D.N.Y.
August 16, 2002)).  In evaluating a motion to transfer venue,
"courts employ an individualized, case-by-case consideration of
convenience and fairness." <u>Posven</u>, 303 F. Supp. 2d at 401
(internal quotation omitted).  Consideration of a motion to
transfer venue lies within the broad discretion of the district
court. <u>Beatie</u>, 431 F. Supp. 2d at 394 (citing <u>Warrick v. Gen.
Elec. Co.</u>, 70 F.3d 736, 740 (2d Cir. 1995)).

II.  <u>This Action Might Have Been Brought in the Western
     District of Washington</u>

To obtain a transfer of venue, the movant must first
establish that "the action to be transferred is one that might
have been brought in the district to which the movant seeks to
have it transferred." <u>Royal Ins. Co.</u>, 2002 WL 31385815 at *2.
Under 28 U.S.C. § 1404(a), an action might have been brought in
another forum if, at the time the action was originally filed,
"the transferee forum would have had personal jurisdiction over
the defendants . . . and if venue properly lies there." <u>Id.</u>
Neither party disputes that this action could have been
commenced in the Western District of Washington. (Def.'s Mem.

5

Supp. 22; Pl.'s Mem. Opp'n 15.)   Indeed, the Western District of Washington is an appropriate forum pursuant to 28 U.S.C. § 1391 because it is the district in which Regal has its principal place of business and, for purposes of venue, the place where Regal resides. (Def.'s Mem. Supp. 22; Pl.'s Mem. Opp'n 15.)

III. The Convenience of the Parties and Witnesses and the
    Interests of Justice Favor Transfer

In assessing the balance of convenience and fairness, courts consider several factors including:

(1) the locus of the operative facts; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) the trial efficiency and the interests of justice based on the totality of circumstances.

Royal Ins. Co., 2002 WL 31385815 at *3.   There is no rigid formula courts must adhere to in balancing these factors. See Beatie, 431 F. Supp. 2d at 395.   Rather, balancing these factors is "essentially an equitable task, left to the court's

6

discretion." Id. (internal quotation omitted).  The Court now
turns to a consideration of the factors most relevant to this
case.

A.    The Locus of Operative Facts

The locus of operative facts is an "important factor to be
considered in deciding where a case should be tried." 800-
Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp.
128, 134 (S.D.N.Y. 1992) (Leisure, J.); see Royal Ins. Co., 2002
WL 31385815 at *3.  Courts routinely transfer cases when the
principal events occurred in another district and the principal
witnesses are located there. See Billing v. Commerce One Inc.,
186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002) (Sweet, J.).  To
determine where the locus of operative facts lies, courts look
to "the site of events from which the claim arises." 800-
Flowers, 860 F. Supp. at 134.  In accordance with the Southern
District's traditional treatment of motions to transfer contract
disputes[1], this Court will determine where the locus of operative

---

[1] In determining where contract disputes arise, the type of evidence courts
consider traditionally depends on the nature of the contract.  In disputes
regarding interpretation of insurance contracts, courts in this District
typically limit their consideration to where the insurance contract was made.
See Royal Ins. Co., 2002 WL 31385815 at *3-4; Indian Harbor Ins. Co. v.
Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005) (Leisure,
J.).  In more general breach of contract disputes such as this one, however,
Southern District Courts have considered where the contract was negotiated,
formed, performed, and breached, Oubre v. Clinical Supplies Mgmt., Inc., No.
05 Civ. 2062, 2005 WL 3077654 at *4 (S.D.N.Y. 2005) ("Contract disputes arise
where the contract was negotiated or executed, where it was performed, and
where the alleged breach occurred") (internal quotation omitted); Kwatra v.

facts lies by considering where the contract was negotiated, formed, performed, and allegedly breached, giving particular weight to the site of performance.

First, determining the locus of operative facts regarding contract negotiation and formation is slightly complicated here by the parties' dispute over which document constitutes their contract. However, the Court need not decide which document constitutes the contract as both parties describe a contract negotiation and formation process that involved the exchange of documents between Washington and New York offices, whether electronically or through facsimile.[2] (Def.'s Rep. Mem. Supp. 6.; Pl.'s Mem. Opp'n 5-6.) Thus, for purposes of contract negotiation and formation, New York and Washington are, collectively, the loci of operative facts. This factor is thus neutral and does not weigh in favor of transfer.

---

MCI, Inc., No. 96 Civ. 2491, 1996 WL 694444 at *3 (S.D.N.Y. 1996) (noting that if the contract dispute had regarded the quality of work done by one of the parties, the locus of operative facts would have included where the contract was negotiated, formed, performed, breached, and terminated), with some courts placing particular emphasis on the site of performance and breach, Billing, 186 F. Supp. 2d at 378 (discussing breach of contract cases where the "locus of operative facts was found to be where the contract was performed, not where it was proposed and negotiated").

[2] Beyond the electronic and facsimile communication, AGL suggests that Regal's three visits to New York were part of the contract process because the visits were intended to "further[] and enhanc[e] the volume of business between AGL and Regal." (Pl.'s Mem. Opp'n 7.) AGL does not offer any evidence, however, that any discussion of the specific terms or conditions of the parties' contractual relationship took place during these visits. Consequently, the Court does not consider these visits to be part of the negotiation or formation of the contract.

8

However, Washington is clearly the locus of operative facts regarding the performance and alleged breach of the parties' agreement.  The parties' agreement was to be performed primarily in Washington. (Def.'s Mem. Supp. 16 ("The Agreement has been performed entirely in Washington, where Regal's facilities and operations are located.")); (Pl.'s Mem. Opp'n 18 ("[T]he goods in question were 'moved' from Regal's Washington facilities . . . .")).  Washington is also the site of the alleged breach. (Pl.'s Mem. Opp'n 7 ("According to AGL's Complaint, Regal's failure to properly perform was in whole or in part a result of Regal's employment of 'illegal, unskilled, untrained and undocumented laborers resulting in the arrest . . . by the United States in early November 2005 of in excess of one hundred persons . . . .'")).  Consequently, the Court finds that Washington is the locus of operative facts regarding the performance and alleged breach of the contract.  This factor weighs in favor of transfer.

Moreover, as AGL's primary claims center on Regal's alleged failure of performance and not on any matters relating to the formation or negotiation of the contract, the Court places particular emphasis on the locus of operative facts relating to the performance and alleged breach of the contract, as compared to that of the negotiation and formation of the contract.  This

9

emphasis on the locus of operative facts regarding contract performance and breach is in keeping with the practice of other courts in this District considering similar motions to transfer breach of contract cases. See Billing, 186 F. Supp. 2d at 378.

B.   Convenience of the Witnesses

Traditionally, the most important factor in determining whether to grant a motion to transfer is the convenience of the witnesses, Arrow Electronics Inc. v. Ducommun Inc., 724 F. Supp. 264 (S.D.N.Y. 1989) (Leisure, J.), especially those that are non-party witnesses, Indian Harbor, 419 F. Supp. 2d at 402.  The moving party must specify the witnesses to be called and provide general information as to what their testimony will cover. See Factors, 579 F.2d at 218.  Based on the information provided by the movant, courts may evaluate the witnesses and afford substantial weight in the balancing calculus to those it deems material. See Indian Harbor, 419 F. Supp. 2d at 404 ("[O]nly material witnesses are afforded substantial weight in the balancing calculus."); Millennium v. Hyland Software, Inc., No. 03 Civ. 3900, 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) ("When weighing the convenience of witnesses, courts must consider the materiality, nature, and quality of each witness").  Whether witnesses hold unique professional positions that might provide them unique perspectives on the facts in question can be an

10

important consideration for courts looking to determine whether the witnesses' testimony will be material and non-cumulative. See Millennium, 2003 WL 22928644 at *4.

Here, Regal has appropriately submitted a list of thirty-one witnesses and provided general information as to what their testimony will cover. (Neeves Decl. 9-16.)  AGL asserts that this list of witnesses is "stacked" and that live testimony is largely unnecessary due to the extensive electronic and paper records that document all pertinent communication and inventory information. (Pl.'s Mem. Opp'n 9.)  The Court disagrees with AGL's assertions.  The testimony of knowledgeable witnesses will be essential to Regal's case in showing the nature, cause, and impact of the alleged delays.  Further, the Court finds that Regal's list of witnesses contains twelve party witnesses and twelve non-party witnesses whose materiality and relevance are sufficient to establish their convenience as an important consideration on this motion to transfer.[3]  All twelve of these

---

[3] The Court considers only twenty-four of the thirty-one witnesses listed by defendant as some are cumulative.  This should not be interpreted as a determination of whose testimony will be admissible at trial.  Regal has not adequately described, for the purposes of its transfer motion, how the testimony of certain witnesses will differ from one another.  For example, Gerald Parr and Keith Swider are described as "senior customer service representatives . . . [r]esponsible for processing Target shipment orders and bills of lading, [who] have first-hand knowledge of the difficulties and delays caused by AGL's flawed shipment order and ordering procedures." (Neeves Decl. 11.)  Without further information, the Court must find that these witnesses, holding identical positions and knowledge, will offer cumulative testimony and so the convenience of both will not be considered. See Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F. Supp. 1247,

party witnesses reside in Washington as do eight of the non-party witnesses. (Neeves Decl. 9-16.)

On the other hand, AGL identifies only six party witnesses and two non-party witnesses. AGL has not provided information as to the location and materiality of all of its witnesses. However, even if the Court assumes that all eight of AGL's witnesses will be inconvenienced, the balance still weighs in favor of transfer. The sheer number of Regal's witnesses, as opposed to AGL's, weighs in favor of transfer. See Millennium, 2003 WL 22928644 at *4. ("The convenience of this forum to one witness, even if he is the president of plaintiff, is outweighed by the inconvenience that would result to the many other witnesses if they were required to testify here."). Further, a special consideration of the convenience of non-party witnesses weighs in favor of transfer. Indian Harbor, 419 F. Supp. 2d at 402 ("The convenience of non-party witnesses is accorded more weight than that of party witnesses."). Regal presents eight non-party witnesses who, living in Washington, would clearly benefit from transfer, whereas AGL does not present a single non-party witness who would benefit from trying the case in New

---

1252 (S.D.N.Y. 1995); see also Millennium, 2003 WL 22928644 at *4 (inferring that "because [witnesses] hold different [professional] positions, they may offer non-cumulative testimony as to different aspects of" the facts in question).

York. (Pl.'s Mem. Opp'n 9.)  Thus, the convenience of party and non-party witnesses weighs heavily in favor of transfer.

C.   Location of Relevant Documents

The location of documents is not a particularly persuasive factor absent a showing that such documents are especially difficult to transport, GPA, Inc. v. Liggett Group Inc., No. 94 Civ. 5735, 1994 WL 537017 at *3 (S.D.N.Y Oct, 4 1994), or that transfer will bring necessary documents within the subpoena power of the transferee court, Beatie, 431 F. Supp. 2d at 397 n.14.  Regal has demonstrated that certain third party shipping companies located within the subpoena power of the District of Washington possess documents relevant to the shipping delays alleged in the AGL's complaint. (Def.'s Mem. Supp. 23.)  As transfer would bring these documents within the subpoena power of the Western District of Washington's Court, this factor weighs in favor of transfer.

D.   Weight Accorded Plaintiff's Choice of Forum

Finally, plaintiff's choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." Beatie, 431 F. Supp. 2d at 395 (internal quotation omitted).  "To overcome the presumption in favor of plaintiff[], defendant must make a clear showing that the proposed transferee district is a more

13

convenient one, and that the interests of justice would be better served by a trial there." Id. (internal quotation omitted).  Often, a plaintiff's choice of forum is given reduced significance when the operative facts of the case have little connection to the plaintiff's chosen forum.  See Mitsui Marine and Fire Ins. Co. v. Kankai Travel International Co., 245 F. Supp. 2d. 523, 526 (S.D.N.Y. 2003); Arrow, 724 F. Supp. at 267. As shown above, the operative facts especially relevant to the issue at hand have little connection to New York, and the convenience of the witnesses weighs strongly in favor of transfer.  For these reasons, the Court gives reduced significance to AGL's choice of forum and does not consider it to weigh strongly against transfer.

E.   The Interest of Justice

In light of the considerations set forth above, the Court finds that, as to those factors most relevant to the facts here -- convenience of party and non-party witnesses, the location of operative facts, and the weight accorded plaintiff's choice of forum -- the balance weighs heavily in favor of transfer.  Thus, the Court finds that, in the interest of justice, this action should be transferred to the Western District of Washington.

14

## CONCLUSION

For the reasons stated, defendant Regal's motion to transfer pursuant to 28 U.S.C. § 1404(a) is GRANTED and this action is transferred to the Western District of Washington.

**SO ORDERED.**

**New York, New York**

August 7, 2007

U.S.D.J.

15

Copies of this Summary Order have been sent to:

Harlan M. Lazarus, Esq.
Lazarus & Lazarus, P.C.
240 Madison Avenue, 8th Floor
New York, New York 10016

Eric B. Levine, Esq.
Wolf, Haldenstein, Adler, Freeman & Herz LLP
270 Madison Ave.
New York, New York 10016